IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>ELIZABETH A. COOLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>ERMI, LLC f/k/a ERMI, INC., et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:20-CV-4181-TWT |

**OPINION AND ORDER**

This is a False Claims Act action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 35]. For the reasons set forth below, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Under Federal Rule of Civil Procedure 15(a)(2), the Court gives the Relator leave to amend the pleading errors in her complaint within 30 days of the date of this Order.

### I.  Background

The Court accepts the facts as alleged in the First Amended Complaint as true for purposes of a motion to dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019). This case arises out of alleged private schemes to defraud federal healthcare and insurance programs. (First Am. Compl. ¶ 1.) Defendant ERMI, LLC manufactures, sells, and leases orthopedic devices that are designed to improve the range of motion in patients' knees,

shoulders, and other joints. (*Id.* ¶¶ 1, 43-44.) A Delaware limited liability company since June 2019, ERMI has its headquarters and manufacturing facilities in Fulton County, Georgia, and is owned through a series of related entities by its chief executive officer, Defendant Thomas P. Branch, M.D. (*Id.* ¶¶ 37-38, 42.) ERMI markets its equipment to healthcare professionals as well as patients who are eligible, or potentially eligible, for public healthcare assistance, such as Medicare, workers' compensation, and military health insurance. (*Id.* ¶¶ 51-52.) Of the more than $40 million in revenue that ERMI generates each year, the "overwhelming majority," according to the First Amended Complaint, comes from the federal government. (*Id.* ¶¶ 83-88.)

The Relator Elizabeth Cooley served as ERMI's chief compliance officer from November 2018 until her termination in October 2019. (*Id.* ¶¶ 2, 60-66.) In that role, Cooley's primary responsibility was to ensure that the company complied with all applicable state and federal regulations and ERMI's Standards of Conduct. (*Id.* ¶ 63.) Based on her review of corporate records and conversations with other ERMI employees, she alleges that ERMI and Branch carried out five schemes to bill the United States for equipment that was not medically necessary, was priced at above-market rates, or otherwise did not conform to government standards. (*Id.* ¶ 1-26.) Those schemes are summarized below.

First, ERMI's research shows that patients regain full range of motion within ten weeks of using its orthopedic equipment, yet it automatically

2

charges for 16-weeks' use when dealing with the federal government. (*Id.* ¶¶ 4-8.) Second, ERMI does not disclose to the Department of Veterans Affairs or the Department of Labor's Office of Workers' Compensation Programs that it offers identical products at steep discounts to customers such as Medicare. (*Id.* ¶¶ 9-16.) Third, ERMI has for many years supplied orthopedic devices to patients in Florida (its single largest market in gross revenue and Medicare dollars) either without the required license or with a fraudulently obtained license. (*Id.* ¶¶17-21.) Fourth, ERMI routinely provides cash and free equipment to clinicians who agree to prescribe ERMI products to patients covered by federal healthcare programs, in violation of the Anti-Kickback Statute. (*Id.* ¶¶ 22-24.) And fifth, during his medical practice, Branch referred his patients to ERMI despite having a non-exempt financial relationship with the company, in violation of the Stark Law. (*Id.* ¶¶ 25-26.)

In the course of each scheme, the Relator alleges that ERMI, Branch, and (as to the "Florida-licensure" scheme) End Range of Motion Improvement, Inc. violated the False Claims Act in two ways. (First Am. Compl. ¶¶ 119-27, 163-68, 196, 202, 206, 213-20, 252, 276, 278-84, 305, 308, 316, 318-25, 339-43.) The first way, known as a "presentment claim," occurs when a person knowingly presents, or causes to be presented, a false claim for payment to the United States. 31 U.S.C. § 3729(a)(1)(A). The second way, known as a "make-or-use claim," occurs when a person knowingly makes, uses, or causes to be made or used a false record or statement that is material to a claim for

payment to the United States. *Id.* § 3729(a)(1)(B). The Relator also asserts a conspiracy claim under 31 U.S.C. § 3279(a)(1)(C) against all of the Defendants, including Chute 15, Inc., AnthroResearch, LLC, and RoboDiagnostics, LLC. (First Am. Compl. ¶¶ 347-53.) Her final claim—for retaliation under 31 U.S.C. § 3730(h)—accuses ERMI and Branch of firing her due to her good-faith compliance efforts. (*Id.* ¶¶ 354-69.) The Defendants now collectively move to dismiss the First Amended Complaint under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required

4

for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff must give the defendant fair notice of his claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

In relevant part, the False Claims Act permits private citizens, acting on behalf of the government, to file a civil action against any person who

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

(C) conspires to commit a violation of subparagraph (A) [or] (B)[.]

31 U.S.C. § 3729(a)(1)(A)-(C); *see also United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1307 (11th Cir. 2002). Generally, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But False Claims Act cases are also subject to the heightened pleading standard of Rule 9(b). *See Clausen*, 290 F.3d at 1308. That means that, to survive a motion to dismiss under the False Claims Act, a plaintiff must "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b)—including "facts as to time, place, and substance of the defendant's alleged fraud." *Clausen*, 290 F.3d at 1310 (quotation marks omitted). "This requirement makes it hard for many

persons to bring a *qui tam* suit and guards against guilt by association." *Id.* at 1308 (quotation marks omitted).

At the outset, the Defendants ask the Court to dismiss the First Amended Complaint as an improper shotgun pleading under Rule 8. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 5-9.) According to the Defendants, the First Amended Complaint bundles multiple claims for relief and multiple theories of liability into single counts, and its allegations lump together multiple Defendants without distinguishing which ones engaged in what specific conduct. (*Id.*) On the whole, the Court agrees with the Defendants' characterization of the First Amended Complaint, but as explained below, the Relator's case cannot be dismissed with prejudice until she has an opportunity to replead her claims in accordance with the Federal Rules of Civil Procedure.

A shotgun pleading is a complaint that fails "to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading[.]" *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). The Eleventh Circuit has explained that shotgun pleadings put an undue burden not only on defendants but also on courts, "which must be able to determine which facts support which claims [and] whether the plaintiff has stated any claims upon which relief can be granted[.]" *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quotation marks omitted). There is thus little tolerance for shotgun pleadings in this circuit: "[t]hey waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on

appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotation marks and alterations omitted). For that reason, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009)

The Eleventh Circuit recognizes four categories of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). "The next most common type . . . is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321-22. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322-23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

The First Amended Complaint falls into at least the third and fourth categories of shotgun pleadings. To begin, Counts I through VI each assert two distinct claims under the False Claims Act—presentment claims and

make-or-use claims—against ERMI, Branch, and (as to Count IV) End Range of Motion. (*E.g.*, First Am. Compl. ¶¶ 119, 123.) The Relator concedes that it is "bad pleading practice" to include a presentment claim in the same count as a make-or-use claim. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 3-4.) *See United States ex rel. Se. Carpenters Reg'l Council v. Fulton Cnty., Ga.*, 2016 WL 4158392, at *11 n.17 (N.D. Ga. Aug. 5, 2016) ("Without explaining which facts support which cause of action, Relators lump their Make-or-Use Claim in with their Presentment Claim in Count 1. . . . This is bad pleading practice and violates the Federal Rules of Civil Procedure."). Even so, she contends that alternative claims can be pleaded together under Rules 8(d) and 10(b) so long as those claims arise out of the same transaction or occurrence. (*Id.* at 3-4.)

In the Court's view, that is not what the First Amended Complaint actually does. Instead, the Relator tries to cover all possible bases by pleading her make-or-use claims *in addition to*, and in the alternative to, her presentment claims. (*E.g.*, First Am. Compl. ¶¶ 123, 164.) Counts I through VI are also uniformly labeled "Violations of False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B)," confirming that liability is sought under both provisions, not one or the other. By lumping her presentment claims together with her make-or-use claims, the Relator has made it "*virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (quotation marks omitted) (emphasis in original). Adding to the confusion, not a single allegation in

8

Counts III through VI even references section 3729(a)(1)(B) outside the count headings. And in her response brief, the Relator admits that one lone paragraph in Count I alleges a violation of section 3729(a)(1)(B). (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 3.) It appears then that most, if not all, of the Relator's make-or-use claims lack any factual basis independent of her presentment claims.

The First Amended Complaint muddies the waters further by reciting the same conclusory, formulaic theories of liability in those six counts. For example, ERMI, Branch, and End Range of Motion allegedly submitted claims for payment to the United States while "certifying falsely" that (1) "said claims were 'accurate, complete, and truthful'"; (2) "said claims 'complie[d] with all applicable Medicare and/or Medicaid law, regulations, and program instructions for payment including but not limited to the Federal anti-kickback statute'"; and (3) "federal healthcare programs were 'provided . . . [with] sufficient information required to allow the Government to make an informed eligibility and payment decision[.]'"[1] (First Am. Compl. ¶¶ 124-26; 165-67;

---

[1] The First Amended Complaint does not specify whether these "false certifications" were express statements by one or more Defendants or were implied by the act of submitting claims to the government. Nor does the First Amended Complaint cite the source(s) of the quoted material in each false-certification allegation—whether statutory or regulatory language, or contractual terms, or something else altogether. Because the False Claims Act imposes liability for both *express* false certifications and *implied* false certifications, those details may be necessary to put the Defendants (and the Court) on notice of the grounds for the Plaintiff's claims. See *United States v.*

217-19; 281-83; 322-24; 340-42) (alterations in original). The Relator also alleges that ERMI and Branch "conceal[ed] and/or fail[ed] to disclose the fact that said claims were tainted by" illegal activity. (*Id.* ¶¶ 127, 168, 220, 284, 325, 343.) But it is unclear which factual allegations are meant to support which legal theories, and which legal theories are meant to support which claims for relief. *See United States ex rel. Musachia v. Pernix Therapeutics, LLC*, 2021 WL 2826429, at *5 (N.D. Ala. July 7, 2021) (asserting "various theories of liability in the same count fails to provide a clear and plain statement required under Rule 8(a), let alone doing so with particularly [sic] under Rule 9(b)").

The shortcomings in the First Amended Complaint do not end there. The Relator asserts all of her claims against multiple Defendants but, in some instances, fails to differentiate the acts and omissions giving rise to each one's liability, as required under Rule 8. *See Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) ("If the complaint indiscriminately groups the defendants together, it fails to comply with the minimum standard of Rule 8."); *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1207 (S.D. Fla. 2021) ("[T]he Complaint's allegations against Defendants collectively as 'Louis Berger' impermissibly lump them together and render the Complaint a shotgun pleading.") (collecting cases). In a case involving multiple defendants,

---

*Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 446-47 (E.D. Penn. 2020).

Rule 9(b)'s particularity standard also demands "specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008).

For example, Count VII alleges that the Defendants conspired to submit false claims to the federal government, in violation of 31 U.S.C. § 3729(a)(1)(C). (First Am. Compl. ¶ 347-53.) But the Relator makes only collective allegations in support of this claim and does not articulate a separate factual basis to hold the Defendants individually liable. (*Id.* ¶¶ 347-50.) *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (dismissing a complaint that was "devoid of specific allegations with respect to the separate Defendants"). Similarly, the Relator claims that Chute 15, AnthroResearch, and RoboDiagnostics are liable for Branch's actions as his alter ego, but her allegations merely parrot the elements of the alter ego doctrine without pleading substantive facts about *how* Branch abused the corporate form.[2]

---

[2] To establish the alter ego doctrine and pierce the corporate veil under Georgia law, a plaintiff must show:

> [1] that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; [2] that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and [3] to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

*McLean v. Continental Wingate Co., Inc.*, 212 Ga. App. 356, 359 (1994)

(First Am. Compl. ¶¶ 56-59.) That is not enough to convert alter ego status into a factual question. (*Contra* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 9.) Instead, courts routinely dismiss complaints whose factual allegations fail "to show plausible liability under the [False Claims Act] based on an alter ego theory[.]" *U.S. v. Genesis Glob. Healthcare*, 2021 WL 4268279, at *10 (S.D. Ga. Sept. 20, 2021) (collecting cases).

In sum, the First Amended Complaint exhibits two of the four hallmarks of a shotgun pleading: it does not "separat[e] into a different count each cause of action or claim for relief," and it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[.]" *Weiland*, 792 F.3d at 1322-23. While the Defendants seek to dismiss the First Amended Complaint with prejudice on this basis, the appropriate recourse is to allow the Relator "one chance to remedy such deficiencies." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018); *see also Vibe Micro*, 878 F.3d at 1296 ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."). Accordingly, the Court dismisses the First Amended Complaint without prejudice so that the Relator may refile a complaint in accordance with this

---

(citation omitted).

12

Order and the Federal Rules of Civil Procedure.[3]

### IV. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' Motion to Dismiss [Doc. 35]. Under Rule 15(a)(2), the Court gives the Relator leave to amend the pleading errors in her complaint within 30 days of the date of this Order.

SO ORDERED, this ___21st___ day of April, 2022.

THOMAS W. THRASH, JR.
United States District Judge

---

[3] Given that the First Amended Complaint is due to be dismissed as a shotgun pleading, the Court declines to reach the Defendants' alternative grounds for dismissal at this time.