IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA ex rel.
ELIZABETH A. COOLEY,

    Plaintiff,

       v.

ERMI, LLC f/k/a ERMI, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-4181-TWT

## OPINION AND ORDER

This is an action brought under the False Claims Act. It is before the Court on Relator Elizabeth Cooley's Motion to Dismiss [Doc. 69] the Defendant ERMI, LLC's counterclaims. For the following reasons, the Relator Elizabeth Cooley's Motion to Dismiss [Doc. 69] is GRANTED in part and DENIED in part.

## I.    Background[1]

This case involves alleged fraudulent claims for reimbursement for durable medical equipment. The Defendant ERMI manufactures and leases equipment that assists orthopedic patients with regaining their range of motion. (Countercls. ¶ 2). The Relator Cooley worked for ERMI as its Chief Compliance Officer from November 2018 until October 2019. (*Id.* ¶ 5). Based

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

on allegedly fraudulent actions that ERMI engaged in while she was an officer, Cooley filed the present *qui tam* action under the False Claims Act. (*See generally* Third Am. Compl.). After the Court's most recent Order on the Defendants' Motion to Dismiss, there are three claims remaining. *United States ex rel. Cooley v. ERMI, LLC,* 2023 WL 3587543, at *8 (N.D. Ga. May 22, 2023). The first two allege that ERMI engaged in unlicensed and fraudulent activity in Florida that constituted making or using false records and statements material to false claims. (Third Am. Compl. ¶¶ 442-85) The third count maintains that ERMI retaliated against Cooley because of her efforts to bring ERMI into compliance with the law and because she threatened to bring a whistleblower suit against ERMI if it did not let her do her job. (*Id.* 486-92). The Court's previous orders in this case spell out in more detail the Relator's allegations. *See, e.g.*, *United States ex rel. Cooley v. ERMI, LLC,* 2023 WL 3587543 (N.D. Ga. May 22, 2023); *United States ex rel. Cooley v. ERMI, LLC*, 2022 WL 4715679 (N.D. Ga. Sept. 30, 2022); *United States ex rel. Cooley v. ERMI, LLC*, 2022 WL 1185155 (N.D. Ga. Apr. 21, 2022).

In response to these claims, the Defendants ERMI and End Range of Motion Improvement, Inc. filed an answer, and ERMI filed counterclaims against Cooley. (Answer at 1; Countercls. ¶ 1).[2] ERMI's counterclaims allege one count of breach of fiduciary duty, one count of negligence per se, and one

---

[2] The Answer and Counterclaims are part of the same document [Doc. 68], but the paragraphs of each are separately counted.

2

count of breach of contract in addition to a claim for litigation expenses. (Countercls. ¶¶ 27-52). The breach of fiduciary duty count alleges that Cooley owed ERMI a fiduciary duty as a corporate officer and breached that duty in several ways. (*Id.* ¶¶ 28, 31-33). First, she allegedly provided legal analysis and interpretation and led ERMI to believe it was receiving legal advice. (*Id.* ¶ 31). Second, ERMI contends that Cooley falsely suggested to ERMI that the renewal process for Florida's Agency for Health Care Administration (AHCA) was going smoothly, that she was working with outside counsel who would submit the renewal to AHCA, and that ERMI was going to receive its license renewal quickly. (*Id.* ¶ 32). Finally, ERMI alleges that Cooley breached her fiduciary duty by preparing to become and becoming a *qui tam* relator in the present action, "including by negligently or intentionally creating the very licensure situation that she now seeks to capitalize upon as a whistleblower." (*Id.* ¶ 33).

Regarding the negligence *per se* claim, ERMI asserts that Cooley practiced law in violation of O.C.G.A. § 15-19-51. (*Id.* ¶ 37-39). Despite not having a license to practice law, Cooley is alleged to have "repeatedly provided ERMI with legal opinions and advice as to numerous matters including legal matters relating to: (a) regulatory compliance; (b) corporate formation and conversion; (c) litigation strategy; (d) intellectual property due diligence; and (e) other similar matters." (*Id.* ¶ 14).

3

Lastly, ERMI claims that Cooley breached a confidentiality agreement that she had signed stating that she would immediately deliver all ERMI property in her possession or control upon termination of her employment. (*Id.* ¶ 43-44). ERMI alleges that Cooley breached this agreement by failing to return confidential information upon her termination and by disclosing confidential information to others, including by attaching such information as exhibits in her Third Amended Complaint. (*Id.* ¶ 44-45). Cooley has filed a Motion to Dismiss stating all of these counterclaims should be dismissed either on public policy grounds or for failure to state a claim upon which relief may be granted. (*See generally* Pl.'s Br. in Supp. of Mot. to Dismiss).

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40

4

F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.   Discussion

Cooley argues that ERMI's counterclaim for breach of fiduciary duty is void as a matter of public policy and that ERMI failed to state a claim. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 4-6). She further contends that ERMI has failed to state a claim for its negligence per se counterclaim. (*Id.* at 6-8). Lastly, she asserts that ERMI's breach of contract claim is void as a matter of public policy. (*Id.* 8-10). The Court considers each of these arguments in turn.

### A. Breach of Fiduciary Duty

Cooley maintains that public policy prohibits ERMI's breach of fiduciary duty claim from proceeding because permitting such a counterclaim would discourage whistleblowers from coming forward and thereby undermine the FCA. (*Id.* at 4-6). Several cases have held that at least some counterclaims are barred by the FCA under this public policy rationale. *See, e.g.*, *Mortgs., Inc. v. U.S. Dist. Court for Dist. Of Nev. (Las Vegas)*, 934 F.2d 209 (9th Cir. 1990); *United States ex rel. Vainer v. DaVita, Inc.*, 2013 WL 1342431, at *4 (N.D. Ga.

Feb. 13, 2013); *United States ex rel. Rodriquez v. Wkly. Publ'ns*, 74 F. Supp. 763 (S.D.N.Y. 1947). ERMI belittles this public policy rule as "judge-invented" and points to the fact that the Eleventh Circuit has not actually decided this issue. (Def.'s Br. in Opp'n to Mot. to Dismiss, at 5-6).

While ERMI is correct that the Eleventh Circuit's reference to this rule was mere dicta, *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 315 n. 9 (11th Cir. 1992), "[t]he unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure." *United States ex rel. Miller v. Bill Harbert Intern. Const. Inc.*, 505 F. Supp. 2d 20, 26 (D.D.C. 2007) (compiling cases) ("*Miller*"). Moreover, "there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result" as an indemnification or contribution counterclaim. *Mortgs., Inc.*, 934 F.2d at 214. On the other hand, a *qui tam* defendant can bring counterclaims if they are based on "independent damages." *United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 153 (D.D.C. 2009) ("*Head*"). In fact, it would violate procedural due process to dismiss a defendant's compulsory counterclaim based on independent damages. *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830-31 (9th Cir. 1993). There are two types of counterclaims that are based on independent damages: (1) counterclaims in which "the conduct at issue is distinct from the conduct underlying the FCA case" and (2) counterclaims in which "the defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found not liable

6

in the FCA case." *Head*, 668 F. Supp. 2d at 153 (citation omitted). While nothing in the breach of fiduciary duty counterclaim limits its success to a finding of nonliability for Cooley's FCA claim, the Court finds that ERMI's claim falls, at least in part, in the first category.

A counterclaim will fall under the first category "if none of the elements of [the counterclaim's] caus[e] of action implicate Defendant's liability under the FCA." *Id.* at 154. For example, a counterclaim asserting a breach of a non-disparagement provision was allowed to proceed because liability for that counterclaim depended on whether the relator "made disparaging or critical statements to third parties in violation of his contractual obligations after this suit was filed and completely apart from this proceeding." *Id.* at 153. By contrast, the same court dismissed a claim for contractual indemnification even assuming there had been willful misconduct and a breach of contract because it was attempting to shift liability for the FCA violations to the relator. *Id.* at 154.

ERMI's claim for breach of fiduciary duty relies on three alleged wrongful acts: (1) leading ERMI to believe that it was receiving legal advice from her, (2) relaying incorrect information about how the AHCA renewal process was going, and (3) becoming a relator in this action regarding the AHCA licensure. (Countercls. ¶¶ 31-33). Going in reverse order, the third allegation expressly relies on Cooley bringing this lawsuit as a relator and is therefore not distinct from Cooley's claims. The second allegation does the

7

same, albeit in a more subtle way. The FCA claims remaining in Cooley's Third Amended Complaint deal mostly with ERMI's activity in Florida either without a license issued by AHCA or based on a license obtained because of intentional misrepresentations made on AHCA license applications. (Third Am. Compl. ¶¶ 442-92). Claiming that Cooley should have to pay ERMI because her actions caused this problem and cost ERMI money is nothing more than a dressed-up (but still barred) claim for contribution or indemnification.

This leaves the allegation that Cooley was misleading ERMI into thinking she was providing legal advice. By contrast to the other allegations, this involves conduct that is entirely separate from Cooley's FCA claim. ERMI alleges that Cooley was "continually providing interpretation and analysis of laws and regulations." (Countercls. ¶ 31). The legal advice Cooley "repeatedly provided ERMI" is alleged to include "(a) regulatory compliance; (b) corporate formation and conversion; (c) litigation strategy; (e) intellectual property due diligence; and (f) other similar matters." (*Id.* ¶ 14). This qualifies as an independent ground for damages. Whether Cooley breached her fiduciary duty by improperly giving legal advice on issues such as corporate formation is not going to stand or fall based on the result of Cooley's FCA claims. As such, the breach of fiduciary duty counterclaim is not void for public policy reasons.[3]

---

[3] If the allegations that ERMI makes are sufficient to state a claim as a whole, "[t]he fact that some of [its] allegations may not contribute to" a breach of fiduciary duty "does not doom an otherwise sufficiently pled claim." *Larkin Cmty. Hosp. v. Intuitive Surgical Inc.*, 2022 WL 18544, at *1 (N.D. Cal. Jan. 3,

Yet, Cooley also argues that ERMI has failed to allege facts showing how it was harmed. (Reply Br. in Supp. of Mot. to Dismiss, at 5-6). In its counterclaims, ERMI alleges that "[a]s a direct and proximate result of Cooley's breaches of her fiduciary duty to ERMI, ERMI was harmed" and "is entitled to an award of compensatory damages in an amount to be proven at trial." (Countercls. ¶¶ 34-35). Relying on *Desai v. Tire Kingdom, Inc.*, 944 F. Supp. 876 (M.D. Fla. 1996), ERMI asserts that it is not required to "spel[l] out the exact damages it contends it is entitled to." (Def.'s Br. in Opp'n to Mot. to Dismiss, at 9). While ERMI is correct that it need not comply with the heightened pleading requirements of Rule 9(b), "an allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal.*" *Int'l Bus. Machs. Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) (citation omitted). ERMI only provides specific facts showing damages related to the failure to renew the AHCA license. However, for the reasons described above, that amounts to a claim for contribution or indemnification and cannot proceed.

Additionally, ERMI's reliance on *Desai* is misplaced. That case involved an Americans with Disabilities Act claim and a similar state law claim; both of which required the plaintiff to show that his injury substantially limited his ability to, e.g., walk, work, or perform manual tasks. *Desai*, 944 F. Supp. at

2022). This is because "a court dismisses claims, not allegations." *Surgical Inst. Serv. Co., Inc. v. Intuitive Surgical, Inc.*, 571 F. Supp. 3d 1133 (N.D. Cal. 2021).

879. The court there rejected a challenge that the plaintiff failed to state a claim by not specifically alleging his knee injury impaired his abilities to do those tasks. *Id.* The court found that such an allegation could be inferred from other specific facts the plaintiff alleged, such as being told his injury was permanent, needing to reduce his working hours, being forced to give up tennis and jogging, and experiencing great pain and being unable to bend his leg after a twelve-hour shift. *Id.* By contrast, the Court cannot infer any independent damages from ERMI's specific allegations. As a result, ERMI has failed to properly state its breach of fiduciary duty counterclaim. The Court will dismiss this count without prejudice to provide ERMI with the opportunity to restate its allegations.

**B. Negligence Per Se**

ERMI has alleged that Cooley is liable under a negligence per se theory based on her engaging in the unauthorized practice of law in violation of O.C.G.A. § 15-19-51. (Countercls. ¶¶ 36-41). Cooley challenges this counterclaim by arguing that ERMI has failed to state a negligence per se claim. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 6). More specifically, she argues that ERMI has neither alleged a violation of O.C.G.A. § 15-19-51 nor a causal connection between any violation and the alleged harm. (*Id.*, at 6-8). The Court finds that ERMI has stated a violation of the statute but has failed to sufficiently allege causation.

Georgia law deems it unlawful for a person not licensed to practice law to, *inter alia*, "hold himself out to the public or otherwise to any person as being entitled to practice law; [t]o render or furnish legal services or advice;…[or] [t]o assume or use or advertise the title of 'lawyer,' 'attorney,' 'attorney at law,' or equivalent terms in any language in such manner as to convey the impression that he is entitled to practice law or is entitled to furnish legal advice, services, or counsel." O.C.G.A. § 15-19-51. To support its counterclaim, ERMI has alleged that Cooley was "continually providing interpretation and analysis of laws and regulations, leading ERMI and its employees to believe that they were receiving legal advice from Cooley." (Countercls. ¶ 39). Namely, "Cooley repeatedly provided ERMI with legal opinions and advice as to numerous matters including legal matters relating to: (a) regulatory compliance; corporate formation and conversion; (c) litigation strategy; (d) intellectual property due diligence; and (f) other similar matters." (*Id.* ¶ 14). Furthermore, this all occurred after Cooley had "touted her law degree as part of her credentials" when she applied for the job. (*Id.* ¶ 6). Her resume not only lists that she has a law degree and a specialization in health law, but it also states that she had "[t]wo years of experience as a compliance and claims attorney with a third party [litigation] and [i]nvestigation [c]ompany." (*Id.* ¶ 7, Ex. F). It further states that she had "[t]hree years of experience in a boutique law firm providing life cycle solutions to healthcare clients from corporate formation, contracting, business association agreements, compliance program

11

structuring, HIPAA and other compliance training, negotiations, litigation, and professional defense." (*Id.*). These allegations state a plausible violation of O.C.G.A. § 15-19-51 by alleging that Cooley furnished legal advice and held herself out as authorized to practice law, including through use of the word "attorney."

Cooley's arguments to the contrary are not persuasive. First, she relies on cases from other jurisdictions to argue that "generalized advice to the public" and "general information about the law" do not fall within the definition of the practice of law. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 7) (quoting *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 105 (S.D.N.Y. 2022) and *State v. Yishmael*, 195 Wash. 2d 155, 169 (2020)). However, even assuming that that case law can be reliably applied to the Georgia statute, ERMI did not allege that Cooley spoke about the law generally or to the public. Rather, it alleges that Cooley "provided ERMI with legal opinions and advice." (Countercls. ¶ 14).

This brings us to the next issue that Cooley raises, namely that ERMI's allegations are not specific enough to assert a plausible claim. In support of this argument, Cooley quotes *Head*, 146 F. Supp. 2d at 155, stating that counterclaims based on statements made by the relator "at some unspecified point in time to unspecified third-parties" do not nudge a counterclaim "across the line 'from conceivable to plausible.'" (Pl.'s Br. in Supp. of Mot. to Dismiss, at 8). However, in this case, the statements were not made to "unspecified third

parties;" they were made to ERMI itself. (Countercls. ¶ 14). Accordingly, unlike the defendant in *Head*, 146 F. Supp. 2d at 155-56, who did "not claim to have knowledge of any evidence of such statements having been made," ERMI has direct knowledge of what Cooley said to it during her employment with ERMI. Moreover, ERMI is not required to plead with particularity the statements that Cooley made because this counterclaim does not fall under Rule 9(b)'s heightened pleading standard.

Finally, Cooley asserts that she never assumed the title of attorney while she was employed by ERMI and did not list on her resume that she was a member of a state bar. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 7-8). These may ultimately provide a basis for finding that Cooley did not engage in the unauthorized practice of law, but at this stage in the proceeding, the Court must accept ERMI's allegations as true and view the facts in the light most favorable to ERMI. Doing so, the fact that Cooley's resume states that she has "[t]wo years of experience as a compliance and claims attorney" and "[t]hree years of experience in a boutique law firm" along with the fact that she has a law degree that she "touted…as part of her credentials" are sufficient to make a plausible claim that she held herself out as a licensed attorney (Countercls. ¶ 6, Ex. F). All in all, ERMI's allegations are sufficient to put Cooley on notice as to her alleged violation of O.C.G.A. § 15-19-51.

Notwithstanding that, ERMI fails to sufficiently state how that alleged violation caused it injury. ERMI generally alleges that "[a]s a direct and

proximate result of Cooley's violations of O.C.G.A. § 15-19-51, ERMI was harmed." (Countercls. ¶ 40). This alone is nothing more than a "formulaic recitation" of an element. *Iqbal*, 556 U.S. at 678 (citation omitted). The only specific example of injury allegedly caused by this violation is the delay associated with receiving the ACHA license renewal. (Countercls. ¶¶ 16-19, 32). ERMI maintains that Cooley "dropped the ball in failing to obtain the license, misled ERMI about the status of the renewal along the way, and caused ERMI significant delay and expense in the process." (Def.'s Br. in Opp'n to Mot. to Dismiss, at 23). ERMI's allegations state, at most, that Cooley engaged in the unauthorized practice of law, performed her role as Chief Compliance Officer incompetently, and caused ERMI injury. "However, even that argument does not explain how the *violation* of the statute caused the harm." *Turner v. Moody Bible Inst. of Chicago, Inc.*, 2016 WL 7839105, at *10 (N.D. Ga. March 9, 2016) (emphasis in original).

ERMI fails to describe in its counterclaims or in its briefs how her alleged dropping the ball on the license or misleading ERMI about the application's status has any relation to her alleged violation of O.C.G.A. § 15-19-51. The ACHA license application does not require a licensed attorney to sign it; a duly authorized officer of the company will suffice. (Reply Br. in Supp. of Mot. to Dismiss, at 15). Thus, the Court cannot infer that Cooley's role overseeing the license renewal, in and of itself, involved the unauthorized practice of law. Similarly unavailing is the allegation that "Cooley falsely

14

suggested that the renewal process was going smoothly, that she was working with outside counsel at King & Spalding who would submit the renewal to AHCA, and that ERMI should get the renewal of the license in short order." (Countercls. ¶ 17). Neither Cooley saying she was working with King & Spalding nor her indication that the application was going well and about to be approved involve "applying legal principles and judgment." *In re UPL Adv. Op. 2003-1*, 280 Ga. 121, 121 (2005). The same can be said about the fact that "a proper renewal application was never submitted to AHCA during this time period by King & Spalding or by Cooley." (Countercls. ¶ 18). Simply put, Cooley allegedly portraying herself as a licensed attorney does not convert every act of incompetence into a negligence per se claim.

Since ERMI fails to state how the alleged harm of delays and associated expenses is connected to Cooley's alleged unauthorized practice of law, this counterclaim must be dismissed.[4] The Court will dismiss the counterclaim without prejudice to allow ERMI a chance to restate it with a proper allegation of causation.

---

[4] Furthermore, to the extent that ERMI is only seeking damages associated with the failure to get a proper AHCA license, it is possible that this counterclaim would also be void as a matter of public policy. However, because Cooley did not raise a public policy defense with respect to the negligence per se count, the Court does not reach this issue.

### C.  Breach of Contract

Cooley claims that allowing ERMI's breach of contract claim regarding the confidentiality agreement she signed violates public policy and that the claim should consequently be dismissed. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 8-10). First, she argues that the statutory requirement to serve to the government in writing "substantially all material evidence and information the person possesses" bars this counterclaim. (*Id.*, at 9) (quoting 31 U.S.C. § 3730(b)(2)). She further argues that the purpose of the FCA would be undermined by permitting this type of counterclaim to move forward, especially given Rule 9(b)'s heightened pleading requirement. (*Id.*, at 10).

As a general matter, "[i]n the absence of an expression of Congressional intent to the contrary, a private agreement is unenforceable on grounds of public policy if its enforcement is clearly outweighed by a public policy against such terms." *Head*, 668 F. Supp. 2d at 152. While there appears to be no binding precedent on this specific issue, there are several cases that provide guidance as to when a counterclaim for breach of a confidentiality agreement may be raised against a relator in an FCA case. When an FCA defendant's breach of confidentiality agreement counterclaim only involves the failure to return evidence that is material to the relator's FCA claim, that counterclaim is prohibited by public policy. *Id.*; *United States ex rel. Grandeau v. Cancer Treatment Ctrs. of America*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004) (agreeing that a "confidentiality agreement cannot trump the FCA's strong policy of

16

protecting whistleblowers who report fraud against the government."). If, however, the relator goes beyond what is reasonable to pursue their *qui tam* claim in maintaining and disclosing such information, that will constitute a permissible counterclaim. *United States ex rel. Ruscher v. Omnicare, Inc.*, 2015 WL 4389589, at *5 (S.D. Tex. July 15, 2015); *Walsh v. Amerisource Bergen Corp.*, 2014 WL 2738215, at *7 (E.D. Pa. June 17, 2014); *see also Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1062 (9th Cir. 2011) (stating that if a public policy exception exists in these circumstances, "those asserting its protection would need to justify why removal of the documents was reasonably necessary to pursue an FCA claim").

This dichotomy makes sense in light of the case law discussed *supra*, in subsection A., regarding independent damages. If a counterclaim for breach of a confidentiality agreement is challenging the retention or dissemination of information unrelated to the FCA case, then it will in no way resemble a disguised claim for indemnification or contribution. Furthermore, permitting a counterclaim for retention and dissemination of documents not reasonably related to the FCA claims will not leave whistleblowers unprotected. Information unrelated to the relator's FCA claims will not be needed to comply with 31 U.S.C. § 3730(b)(2) or to meet the Rule 9(b) pleading standards. Additionally, since a counterclaim cannot be raised involving the retention of anything reasonably related to the FCA action, innocent relators will not be punished. *Cf. Miller*, 505 F. Supp. 2d at 28.

Here, ERMI has alleged that Cooley retained, disclosed, and failed to return confidential information in violation of a confidentiality agreement she signed. (Countercls. ¶¶ 44-45). To the extent that these allegations are related to Cooley's FCA claims, ERMI will not be able to recover. However, the allegations are not explicitly limited to Cooley's preparation for and pursuit of her FCA claims. (*Id.* ¶¶ 42-46). Additionally, ERMI does not have the burden to specifically name which non-FCA-related documents the relator wrongfully retained or disclosed. *Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013). "Because it is too early for the Court to" determine whether the documents Cooley has retained are reasonably necessary to her FCA claims, "it cannot conclude that the counterclaim in its entirety should be dismissed on public policy grounds." *United States ex rel. Notorfransesco v. Surgical Monitoring Assoc., Inc.*, 2014 WL 7008561, at *5 (E.D. Pa. Dec. 12, 2014). The Court will thus deny Cooley's Motion to Dismiss with respect to the breach of contract claim.

## IV.   Conclusion

For the forgoing reasons, Relator Elizabeth Cooley's Motion to Dismiss [Doc. 69] is GRANTED in part and DENIED in part.

SO ORDERED, this ___2nd___ day of November, 2023.

THOMAS W. THRASH, JR.
United States District Judge

18