IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA ex rel.
ELIZABETH A. COOLEY,

     Plaintiff,

         v.

ERMI, LLC f/k/a ERMI, INC., et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-4181-TWT

**OPINION AND ORDER**

This is a False Claims Act case. It is before the Court on Relator Elizabeth Cooley's Motion to Dismiss [Doc. 85] Defendant ERMI, LLC's counterclaims. For the reasons explained below, the Relator's Motion to Dismiss [Doc. 85] is DENIED.

## I.     Background[1]

This case is about allegedly fraudulent claims for reimbursement for durable medical equipment. Defendant ERMI manufactures and leases equipment that assists orthopedic patients regain range of motion. (First Am. Countercls. ¶ 2). Relator Elizabeth Cooley worked for ERMI as its Chief Compliance Officer from November 2018 until October 2019. (*Id.* ¶ 5). Based on allegedly fraudulent actions that ERMI engaged in while she was an officer,

---

[1] The Court accepts the facts as alleged in the First Amended Counterclaims as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Cooley filed the present *qui tam* action under the False Claims Act. (*See generally* Third Am. Compl.). After the Court's order on the Defendants' most recent Motion to Dismiss, Cooley has three claims remaining. *See United States ex rel. Cooley v. ERMI, LLC*, 2023 WL 3587543, at *8 (N.D. Ga. May 22, 2023). The first two allege that ERMI engaged in unlicensed and fraudulent activity in Florida that constituted making or using false records and statements material to false claims. (Third Am. Compl. ¶¶ 442-85) The third surviving count maintains that ERMI retaliated against Cooley because of her efforts to bring ERMI into compliance with the law and because she threatened to bring a whistleblower suit against ERMI if it did not let her do her job. (*Id.* ¶¶ 486-92). The Court's previous orders in this case spell out in more detail the Relator's allegations. *See, e.g.*, *United States ex rel. Cooley v. ERMI, LLC*, 2023 WL 3587543 (N.D. Ga. May 22, 2023); *United States ex rel. Cooley v. ERMI, LLC*, 2022 WL 4715679 (N.D. Ga. Sept. 30, 2022); *United States ex rel. Cooley v. ERMI, LLC*, 2022 WL 1185155 (N.D. Ga. Apr. 21, 2022).

In response to these claims, the Defendants ERMI and End Range of Motion Improvement, Inc. filed an answer. (Answer at 1). ERMI also filed counterclaims against Cooley for breach of fiduciary duty, negligence per se, and breach of contract as well as a request for litigation expenses. (Countercls. ¶¶ 1, 27-52)[2]. In an Opinion and Order entered on November 2, 2023, the Court

---

[2] ERMI's original counterclaims were on the same document as the Answer [Doc. 68], but the paragraphs of each were separately counted.

granted the Relator's motion to dismiss ERMI's breach of fiduciary duty and negligence per se claims. *United States ex rel. Cooley v. ERMI, LLC*, 2023 WL 7224174 (N.D. Ga. Nov. 2, 2023). Since then, ERMI has amended its counterclaims and now asserts claims for breach of fiduciary duty and breach of contract in addition to requesting litigation expenses. (First Am. Countercls. ¶¶ 28-48). Cooley again moves to dismiss ERMI's counterclaims.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only

give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.   Discussion

Cooley seeks dismissal of all counterclaims. She asserts that the breach of fiduciary duty should be dismissed because it is contrary to public policy, based wholly on a breach of contractual duty, and barred by the economic loss rule. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 2-9). Cooley moves to dismiss the breach of contract claim as prohibited by public policy and by the terms of the Confidentiality, Non-Competition, and Intellectual Property Agreement ("Confidentiality Agreement"). (*Id.* at 10-12). Finally, she seeks dismissal of the claim for litigation expenses because it is derivative of the other claims which assertedly fail. (*Id.* at 12). The Court considers these arguments in turn.

### A.  Breach of Fiduciary Duty

ERMI alleges that Cooley owed it a fiduciary duty as a corporate officer and breached that duty in three different ways: (1) leading ERMI to believe that it was receiving legal advice from Cooley, (2) falsely suggesting that the AHCA renewal process was going well and that ERMI should receive a renewal shortly, and (3) retaining ERMI's property after her employment ended. (First Am. Countercls. ¶¶ 29-34). These breaches allegedly caused ERMI to be injured because ERMI did not receive the legal advice it expected to receive when it hired Cooley, was forced to defend a lawsuit filed against it by a

4

competitor due to Cooley's actions, and has not had its property returned to it. (*Id.* ¶ 35). Consequently, ERMI seeks relief in the form of disgorgement of Cooley's salary when she was breaching her fiduciary duties, costs that ERMI incurred while defending the competitor's lawsuit, and nominal damages. (*Id.* ¶¶ 36-37). Cooley attacks these allegations on various grounds.

### i.    Public Policy

First, she argues that permitting this counterclaim would violate public policy by discouraging whistleblowers from coming forward. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 4-6). The Court outlined the reach of the public policy bar in its November 2 Order:

> Several cases have held that at least some counterclaims are barred by the FCA under this public policy rationale. *See, e.g.*, *Mortgs., Inc. v. U.S. Dist. Court for Dist. Of Nev. (Las Vegas)*, 934 F.2d 209 (9th Cir. 1990); *United States ex rel. Vainer v. DaVita, Inc.*, 2013 WL 1342431, at *4 (N.D. Ga. 6 Feb. 13, 2013); *United States ex rel. Rodriquez v. Wkly. Publ'ns*, 74 F. Supp. 763 (S.D.N.Y. 1947)....
>
> "The unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure." *United States ex rel. Miller v. Bill Harbert Intern. Const. Inc.*, 505 F. Supp. 2d 20, 26 (D.D.C. 2007) (compiling cases) ("*Miller*"). Moreover, "there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result" as an indemnification or contribution counterclaim. *Mortgs., Inc.*, 934 F.2d at 214. On the other hand, a *qui tam* defendant can bring counterclaims if they are based on "independent damages." *United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 153 (D.D.C. 2009) ("*Head*"). In fact, it would violate procedural due process to dismiss a defendant's compulsory counterclaim based on independent damages. *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830-31 (9th Cir. 1993). There are two types of counterclaims that are based on independent damages:

(1) counterclaims in which "the conduct at issue is distinct from the conduct underlying the FCA case" and (2) counterclaims in which "the defendant's claim, though bound up in the facts of the FCA case, can only prevail if the defendant is found not liable in the FCA case." *Head*, 668 F. Supp. 2d at 153 (citation omitted)....

A counterclaim will fall under the first category "if none of the elements of [the counterclaim's] caus[e] of action implicate Defendant's liability under the FCA." *Id.* at 154. For example, a counterclaim asserting a breach of a non-disparagement provision was allowed to proceed because liability for that counterclaim depended on whether the relator "made disparaging or critical statements to third parties in violation of his contractual obligations after this suit was filed and completely apart from this proceeding." *Id.* at 153. By contrast, the same court dismissed a claim for contractual indemnification even assuming there had been willful misconduct and a breach of contract because it was attempting to shift liability for the FCA violations to the relator. *Id.* at 154.

*ERMI, LLC*, 2023 WL 7224174, at *2-3 (alteration omitted). The Court found that part of ERMI's allegations fit the requirements of the first category. *Id.* at *3. It also found that the second category did not apply because there was "nothing in the breach of fiduciary duty counterclaim [that] limits its success to a finding of nonliability for Cooley's FCA claim." *Id.*

ERMI has not amended its pleading in any way that makes it so this counterclaim "can only prevail if the defendant is found not liable in the FCA case." *Head*, 668 F. Supp. 2d at 153 (citation omitted). Thus, the second category still does not apply. Whether the breach of fiduciary duty counterclaim is barred by public policy therefore depends on whether "the conduct at issue is distinct from the conduct underlying the FCA case." *Id.* The Court concludes that some of ERMI's allegations are distinct from the conduct

underlying Cooley's claims.

The first way in which Cooley allegedly breached her fiduciary duty was by misleading ERMI to believe it was receiving legal advice from Cooley. (First Am. Countercls. ¶ 32). The Court previously concluded that this allegation is distinct from the conduct of the FCA claims because "[t]he legal advice Cooley repeatedly provided ERMI is alleged to include (a) regulatory compliance; (b) corporate formation and conversion; (c) litigation strategy; (e) intellectual property due diligence; and (f) other similar matters." *ERMI, LLC*, 2023 WL 7224174, at *3 (quotation marks and citation omitted).[3] The same allegation is made here. (First Am. Countercls. ¶ 14). Because the legal advice involved subject matter that is entirely unrelated to the underlying FCA claims, the Court maintains that ERMI is not barred by public policy from pursuing this counterclaim on this basis.

ERMI also alleges Cooley breached her fiduciary duty by misleading ERMI about the AHCA renewal process. (First Am. Countercls. ¶ 33). The Court previously found that this was not distinct from the underlying FCA claims because the FCA claims "deal mostly with ERMI's activity in Florida either without a license issued by AHCA or based on a license obtained because

---

[3] The Court dismissed the counterclaim anyways because ERMI had not stated any injury stemming from the alleged breach of fiduciary duty. *ERMI, LLC*, 2023 WL 7224174, at *4. ERMI has now stated that it "was harmed by not receiving the legal advice and consultation it expected to receive when it hired Cooley." (First Am. Countercls. ¶ 35). Cooley does not challenge this injury as insufficient.

of intentional misrepresentations made on AHCA license applications." *ERMI, LLC*, 2023 WL 7224174, at *3. "Claiming that Cooley should have to pay ERMI because her actions caused this problem and cost ERMI money is nothing more than a dressed-up (but still barred) claim for contribution or indemnification." *Id.* In amending its counterclaims, ERMI has added an allegation that Cooley's actions "subjected ERMI to costly litigation brought by one of its competitors." (First Am. Countercls. ¶ 33).

ERMI argues that because the competitor's lawsuit raised a claim under the Florida Deceptive and Unfair Trade Practices Act rather than the FCA, this constitutes independent damages and is not barred by public policy. (Def.'s Br. in Opp'n to Mot. to Dismiss, at 9-14). The Court agrees. Cooley accurately points out that both her FCA claim and the competitor's lawsuit involved operating in Florida without a valid AHCA license. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 5). However, the conduct at issue can be found to be distinct "even where there is a close nexus between the facts, so long as there is a clear distinction between the facts supporting liability against relator and the facts supporting liability against the FCA defendant." *Miller*, 505 F. Supp 2d at 27; (*see also* Def.'s Br. in Opp'n to Mot. to Dismiss, at 13 ("In sum, Cooley does nothing more than point to an overlap in the underlying facts. But that overlap is what makes ERMI's counterclaims ***compulsory***. It is not a *coup de grâce* that renders them impermissible for failure to state a claim based on independent damages.") (citations omitted)). ERMI has now provided enough facts to show

8

that there is that "clear distinction" between the facts supporting liability for each claim. *Miller*, 505 F. Supp 2d at 27.

In *United States ex rel. Morgan v. Champion Fitness, Inc.*, 368 F. Supp. 3d 1198, 1208-09 (C.D. Ill. Feb. 19, 2019), the plaintiff sought "to disgorge payments to Relator, alleging she either failed to perform her contractual duties by not ensuring compliance with Medicare billing regulations (Count VI) or, in the alternative, it would be unjust enrichment for her to keep the payments despite the lack of a contract because she failed to earn any compensation by not ensuring compliance (Count VII)." The Court concluded that such claims were not barred by public policy, even though they were not factually independent of the underlying FCA claims. *Id.* at 1209. More specifically, it determined that "[a] jury could find Relator submitted false claims, thus breaching her contract (or being unjustly enriched), but could nonetheless find Defendants did not know of the false submissions, making them not liable under the FCA" and therefore concluded that her breach of contract and unjust enrichment claims "d[id] not require Defendants be found either liable or not liable to succeed." *Id.* Similarly, a jury here could find that Cooley's lack of care led ERMI to being sued by a competitor but that ERMI did not knowingly submit any false claims. Thus, Cooley's alleged mishandling of the AHCA application is "truly independent of the FCA claims because" it does not "require as an essential element that the FCA defendant was liable— or not liable—in the FCA case." *Miller*, 505 F. Supp at 27.

Cooley disagrees, asserting that "this claim for damages is yet another clever attempt by ERMI to seek what federal law denies it under the guise of affirmative state law rights of actions." (Reply Br. in Supp. of Mot. to Dismiss, at 6) (alteration, quotation marks, and citation omitted). First, she claims that ERMI received its first AHCA license before Cooley worked for ERMI and Cooley therefore could not have made any representations on that application. (*Id.*). However, this statement relies on an allegation made in Cooley's Third Amended Complaint, not ERMI's First Amended Counterclaims, and "[a]t this stage, the Court must confine its inquiry to the four corners of the countercomplaint." *Ferrier v. Q Link Wireless*, 2019 WL 3408911, at *1 (S.D. Fla. May 3, 2019) (citation omitted). Moreover, even if the Court did look to the Third Amended Complaint, ERMI has denied the cited allegation in its Answer. (Answer ¶ 13). The Court cannot make credibility determinations against the non-moving party at this stage. Cooley also asserts that it was ERMI's actions rather than Cooley's that caused ERMI to incur the legal fees from the competitor's lawsuit. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 6). This is similarly a merits question that is not ripe for determination at this time. All in all, since the breach of fiduciary duty claim does not "*only* have the effect of offsetting liability," public policy does not bar the claim on this theory. *Madden*, 4 F.3d at 831.

Finally, ERMI alleges that Cooley breached her fiduciary duty by retaining ERMI's property after her employment ended. (First Am. Countercls.

¶ 34). As explained in more detail in the next subsection, the only alleged breach of fiduciary duty involving the retention of documents is the use of those documents for this *qui tam* action. Accordingly, this counterclaim is not independent of Cooley's FCA claims and is barred by public policy.

### ii.   Failure to Allege Breach of Fiduciary Duty

Cooley's second argument is that the breach of fiduciary duty claim is based on nothing more than a failure to perform contractual obligations and therefore cannot constitute a tort. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 6-8). ERMI asserts that it has properly alleged violations of the duties of care, good faith, and loyalty. (Def.'s Br. in Opp'n to Mot. to Dismiss, at 14-16). The Court concludes that ERMI has properly alleged a breach of fiduciary duty as it pertains to its allegation that Cooley misled ERMI about the AHCA license renewal process.

"[A]n action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty—the duty must arise independent of contract to constitute a tort." *Travelers Ins. Co. v. King*, 160 Ga. App. 473, 475 (1981) (citation omitted); *see also Wimpy v. Martin*, 356 Ga. App. 55, 56 (2020) ("It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him." (alteration and citations omitted)). As ERMI

asserts, the Georgia Court of Appeals has found "claims for breach of fiduciary duty to be well pled even when they are derived from language in a contract." *Wimpy*, 356 Ga. App. at 56 (citations omitted). However, all the cases cited by the court raise issues about whether the parties had a relationship that gave rise to a fiduciary duty, and the courts used contract language to help determine that. *Id.* Here, there is no doubt that Cooley, as a corporate officer, owed fiduciary duties to ERMI. *See, e.g.*, O.C.G.A. § 14-2-842(a) ("An officer shall perform his or her duties in good faith and with the degree of care which an ordinarily prudent person in a like position would use under similar circumstances."); *FDIC v. Loudermilk*, 295 Ga. 579, 581 (2014) ("At common law, corporate officers and directors in Georgia owed a duty to exercise ordinary care." (citation omitted)). The issue is whether ERMI has sufficiently alleged that Cooley breached those duties.

One way in which Cooley allegedly breached her duties was by retaining confidential documents. ERMI cites to *Tante v. Herring*, 264 Ga. 694 (1994) to support that proposition that "Cooley had a fiduciary duty to not walk off with confidential information separate and apart from her contractually imposed duty requiring the same." (Def.'s Br. in Opp'n to Mot. to Dismiss, at 15). However, *Tante* does not impose such a broad duty. *Tante* involved a breach of fiduciary duty claim based on an attorney's "alleged misuse, to his own advantage, of confidential information in medical and psychological reports concerning Mrs. Herring obtained in and solely because of Tante's

12

representation of her." *Id.* at 695. Moreover, "Tante did not controvert the allegations that he took advantage of information contained in Mrs. Herring's confidential medical and psychological reports about her impaired emotional and mental condition, that Tante took advantage of that condition, convincing her to have an affair with him, resulting in physical and mental harm to the Herrings." *Id.* (citation omitted). The Supreme Court of Georgia found that the client sufficiently pled that her attorney breached his fiduciary duty "[b]y using information available to him solely because of the attorney client relationship to his advantage and to the Herrings' disadvantage." *Id.*

By contrast, the only way in which Cooley has allegedly used ERMI's confidential information to her advantage and ERMI's disadvantage is by filing this *qui tam* action. Public policy forbids a counterclaim on that basis. ERMI has not made any allegations that Cooley used information gleaned from the confidential documents to take advantage of ERMI nor that Cooley solicited customers for a rival business, directly competed with ERMI's business, or misrepresented ERMI's financial status to persuade customers to change to a rival business. Any of these would have sufficed to assert a breach of fiduciary duty claim. *Id.* (permitting plaintiff to pursue damages for breach of fiduciary duty when attorney used confidential information to convince his client to have an affair); *Tom's Amusement Co., Inc. v. Total Vending Servs.*, 243 Ga. App. 294, 295-296 (2000) ("[A]n employee owes a duty of loyalty, faithful service and regard for an employer's interest. Thus, before the end of his employment, no

employee may solicit customers for a rival business nor otherwise directly
compete with his employer's business. Nor may he misrepresent his employer's
financial status to persuade customers to change to the rival business."
(quotation marks and citations omitted)). Moreover, ERMI cites to no authority
which allows a breach of fiduciary duty claim to proceed merely based on the
retention of documents.[4]  Without an allegation that Cooley did anything with
the confidential information that was against ERMI's interest (other than the
pursuit of Cooley's FCA claims), the First Amended Counterclaims does not
state a claim for breach of fiduciary duty based on the retention of documents.

As it pertains to the allegation that Cooley was leading ERMI to believe
that it was receiving legal advice from Cooley, the Court also finds that ERMI
fails to plead any breach. ERMI's allegation about this basis for breach reads
in its entirety: "Cooley breached her fiduciary duty to ERMI by continually
providing interpretation and analysis of laws and regulations, leading ERMI

---

[4] This fact also leads to divergent results with respect to the public
policy challenges to the breach of fiduciary duty and breach of contract claims
in this case. With the breach of contract claim, the mere retention of
confidential documents violates the Confidentiality Agreement that Cooley
signed. Consequently, any confidential document retention is sufficient to state
a breach of contract claim, unless public policy otherwise prohibits it. On the
other hand, ERMI provides no authority for the proposition that the mere
retention of documents is sufficient to allege a breach of fiduciary duty. Thus,
ERMI must rely on some action that Cooley took that was contrary to ERMI's
interest. To the extent that ERMI relies on the bringing of a *qui tam* suit
against it to assert this claim, public policy bars that reliance as to the whole
claim. Yet, without such reliance, there is no allegation left to state a claim for
breach.

and its employees to believe that they were receiving legal advice from Cooley." (First Am. Countercls. ¶ 32). As Cooley points out, "ERMI does not allege that this advice was incorrect or otherwise caused it any harm. ERMI also fails to allege a deviation from the standard of care, much less a gross deviation therefrom." (Reply Br. in Supp. of Mot. to Dismiss, at 2). Nor is there any allegation in the First Amended Complaint showing that Cooley acted in bad faith by interpreting laws and regulations or leading ERMI to believe it was receiving legal advice.

ERMI argues against dismissal in two ways. First, it contends that Cooley never raised this issue. (Def.'s Br. in Opp'n of Mot. to Dismiss, at 6-7). To the contrary, she did. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 6-8). In fact, she specifically stated:

> ERMI's allegation that Ms. Cooley breached her duties regarding "the interpretation and legal analysis of various laws and regulations" (¶10) "by continually providing interpretation and analysis of laws and regulations" (¶32) fails to show a deviation from the standard of care, much less a gross deviation therefrom. In fact, these allegations, when read together, indicate that Ms. Cooley satisfied the standard of care by fulfilling her contractual obligations.

(*Id.* at 7 n.2). Second, ERMI quotes *Abdel-Samed v. Dailey*, 294 Ga. 758, 765 (2014), for the proposition that whether Cooley breached her duty of care is "within the exclusive province of the jury." (Def.'s Br. in Opp'n to Mot. to Dismiss, at 15-16). However, ERMI selectively omits the introductory phrase of that quote which states that the issue of gross negligence is a jury question

"when facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable people as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence." *Abdel-Samed*, 294 Ga. at 765 (alterations and citations omitted). Here, ERMI has not made any factual allegation from which reasonable people could disagree as to whether there was negligence. Therefore, ERMI cannot pursue its breach of fiduciary duty counterclaim on this basis.

Notwithstanding that, the Court finds that ERMI adequately alleged a breach of fiduciary duty regarding her handling of the AHCA renewal application. A reasonable jury could find that misleading the ERMI about how the AHCA renewal process was going is sufficiently negligent to be considered a breach of the duty of care. Since ERMI has adequately stated breach on one of the allegations, the breach of fiduciary duty claim will not be dismissed on this basis. *See Surgical Inst. Serv. Co., Inc. v. Intuitive Surgical, Inc.*, 571 F. Supp. 3d 1133, 1140 (N.D. Cal. 2021) ("[A] court dismisses claims, not allegations.").

### iii.   Economic Loss Rule

Cooley's last argument against ERMI's breach of fiduciary duty counterclaim is that it is barred by the economic loss rule. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 8-9). "The economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in

contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 78 (2005) (quotation marks and citation omitted). "However, where an independent duty exists under the law, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Hanover Ins. Co. v. Hermosa Constr. Grp., LLC*, 57 F. Supp. 3d 1389, 1396 (N.D. Ga. 2014) (quotation marks and citation omitted). As explained above, Cooley owed ERMI an independent duty by virtue of her position as a corporate officer, rather than from any contract she signed. Accordingly, the breach of fiduciary duty claim should not be dismissed.[5]

### B. Breach of Contract

Cooley raises two arguments to support the dismissal of ERMI's breach of contract claim. First, she contends that this claim is barred by public policy because all confidential information retained by Cooley is sufficiently related to her FCA claims. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 10). The Court has already ruled that ERMI's "allegations are not explicitly limited to Cooley's preparation for and pursuit of her FCA claims" and that "ERMI does not have

---

[5] Cooley also argues that ERMI cannot pursue salary disgorgement for its breach of fiduciary duty claim. (Reply Br. in Supp. of Mot. to Dismiss, at 2-5). However, this issue was raised for the first time in her reply brief, so it is not properly before the Court. *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n. 16 (11th Cir. 1987) ("It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief." (citation omitted)). The Court will therefore not address this question.

the burden to specifically name which non-FCA-related documents the relator wrongfully retained or disclosed." *ERMI, LLC*, 2023 WL 7224174, at *7 (citations omitted). ERMI's First Amended Counterclaims did not materially change (at least with respect to this issue) the breach of contract allegations. (*Compare* Countercls. ¶¶ 42-46, *with* First Am. Countercls. ¶¶ 38-42).

The only addition that this Motion to Dismiss contributes to the previous discussion is a citation to a case not raised in the last motion to dismiss. In *Arconic Inc. v. Novelis Inc.*, 2018 WL 4944378, at *4 (W.D. Pa. March 22, 2018), the special master recommended dismissing a count alleging misappropriation of trade secrets and, in the alternative, breach of contract. The special master stated, "[i]f Arconic wishes to plead in the alternative in this manner, because of the exceptional degree of overlap of the allegations of trade secret misappropriation and confidential information misuse, Arconic should be required to identify any such alleged confidential proprietary information." *Id.* Moreover, "[t]he Special Master recommend[ed] to the Court that this form of alternate pleading be ordered to be pled by Arconic in a separate count of the Amended Complaint, to avoid confusion with Count I when the case is tried." *Id.* at *5. The same reasoning does not apply here. There is no alternative pleading, exceptional degree of overlap, or potential for confusion based on how ERMI has pleaded its counts. Furthermore, even if such factors were present, the special master only recommended requiring information that "Arconic should be expected to be able to identify…with reasonable particularity." *Id.* at

*7. For other information, the special master recommended permitting "reasonably tailored and proportionate discovery." *Id.*

The Court cannot conclude that ERMI should be able to identify which documents, if any, Cooley retained after her employment that bore no relation to her FCA claims. Courts in similar circumstances have routinely permitted FCA counterclaims to proceed to discovery. *See, e.g.*, *United States ex rel. Notorfransesco v. Surgical Monitoring Assoc., Inc.*, 2014 WL 7008561, at *5 (E.D. Pa. Dec. 12, 2014) ("It is possible, however, that Notorfransesco is in possession of information that is not related to proving her claim, in which case SMA's requested injunctive relief would be appropriate. Because it is too early for the Court to make such determinations, it cannot conclude that the counterclaim in its entirety should be dismissed on public policy grounds." (citations omitted)); *Walsh v. Amerisource Bergen Corp.*, 2014 WL 2738215, at *7 (E.D. Pa. June 17, 2014) ("Unlike in *Miller*, the parties in the instant case are still in the early stages of litigation. We acknowledge the possibility that discovery will reveal that all of the confidential documents, if there are any, were adequately related to the relator's FCA claims.... However, it is not only unnecessary, it would be imprudent to make this determination at this juncture, prior to the conclusion of discovery." (alteration, quotation marks, and citation omitted)); *Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013) ("For now, however, neither Natera's failure to identify specific documents, nor the fact that its claims for misappropriation of

19

confidential documents arise in the context of an FCA suit, require dismissal of its counterclaims.")). *But see United States ex rel. Cieszynski Lifewatch Servs., Inc.*, 2016 WL 2771798, at *5 (granting motion to dismiss because "although LifeWatch argues that relator took many more documents than were necessary to support his claim, it has made the claim of overreaching with respect to only one specific document – a spreadsheet that LifeWatch admits does contain relevant information"). The Court agrees that it would be inappropriate to dismiss ERMI's breach of contract counterclaim on public policy grounds at this early stage of the litigation.

Cooley's second argument is that her disclosure of confidential information was permitted under the Confidentiality Agreement. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 10-12). The Confidentiality Agreement states under the heading "Permitted Disclosures" the following:

> Notwithstanding any other provision of this Agreement, Employee is not prohibited from providing truthful testimony or accurate information in connection with any investigation being conducted into the business or operations of the Company Group by any government agency or other regulator that is responsible for enforcing a law on behalf of the government or otherwise providing information to the appropriate government regulatory agency or body regarding conduct or action undertaken or omitted to be taken by the Company Group that Employee reasonably believes is illegal or in material non-compliance with any financial disclosure or other regulatory requirement applicable to the Company Group.

(First Am. Countercls., Ex. C, at 3).

This provision does not warrant dismissal of the counterclaim. The Confidentiality Agreement only provides a safe harbor if Cooley "reasonably believe[d]" that the information she disclosed regarded acts or omissions that were illegal or not compliant with applicable regulations. *Id.* The question therefore becomes how closely related the information she disclosed is to her FCA claims.[6] As discussed above, it is too early in the litigation to decide the answer to that question. The Court therefore concludes that the Confidentiality Agreement does not warrant dismissal of this counterclaim.

### C. Litigation Expenses

Cooley asserts that ERMI's request for litigation expenses should be dismissed because a claim for attorney's fees under O.C.G.A. § 13-6-11 requires an underlying claim to proceed. (Pl.'s Br. in Supp. of Mot. to Dismiss, at 12 (citing *Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1324 (11th Cir. 2004)). Since ERMI's counterclaims survive the Motion to Dismiss, so too does its claim for litigation expenses.

### IV.   Conclusion

For the foregoing reasons, the Relator's Motion to Dismiss [Doc. 85] is DENIED.

---

[6] Moreover, the Confidentiality Agreement only permits "providing" information and testimony to the government. (First Am. Countercls., Ex. C, at 3). Meanwhile, the counterclaim is broader than that and alleges that Cooley has been improperly "retaining" information. (First Am. Countercls. ¶ 40). This provision would not protect Cooley if she retained information that she did not provide to the government.

SO ORDERED, this ____27th____ day of February, 2024.

THOMAS W. THRASH, JR.
United States District Judge