IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA ex rel. ELIZABETH A. COOLEY, <br><br> Plaintiffs, <br><br> v. <br><br> ERMI, LLC f/k/a ERMI, INC., et al., <br><br> Defendants. | CIVIL ACTION FILE NO. 1:20-CV-4181-TWT |

### OPINION AND ORDER

This is a False Claims Act case. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 119] and the Defendants' Motion to Strike [Doc. 134]. For the reasons set forth below, the Defendants' Motion for Summary Judgment [Doc. 119] is GRANTED in part and DENIED in part, and the Defendants' Motion to Strike [Doc. 134] is DENIED.

### I.   Background[1]

This action arises out of the alleged retaliatory firing of Plaintiff Elizabeth Cooley. ERMI, LLC f/k/a ERMI, Inc. manufactures and leases equipment that assists orthopedic patients regain range of motion. (Defs.'

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Statement of Undisputed Material Facts ¶ 1). The Plaintiff was hired as Chief Compliance Officer of ERMI on November 18, 2018. (*Id.* ¶ 6). At the time, Dr. Thomas Branch was the Chief Executive Officer of ERMI and was the person to whom the Plaintiff directly reported. (*Id.* ¶¶ 3, 7). Branch is also the founder and majority owner of ERMI. (*Id.* ¶ 2). Also during the Plaintiff's tenure at ERMI, Mikael Ohman was ERMI's Chief Operating Officer, and Gil Madrid was ERMI's Chief Marketing Officer. (*Id.* ¶¶ 5, 21).

Branch took over as CEO in November 2018 when the former CEO was fired upon discovery that ERMI's Florida Agency Health Care Administration ("AHCA") license had lapsed. (*Id.* ¶ 4). If a company wishes to provide home medical goods and services to consumers in Florida, it must be licensed by the Florida AHCA. (Pl.'s Statement of Undisputed Material Facts ¶ 9). Part of the Plaintiff's job was to assist ERMI in renewing the AHCA license. (Defs.' Statement of Undisputed Material Facts ¶ 14). By late May 2019, the new AHCA license application had not been submitted yet. *See* (*id.* ¶ 30). After that point, Branch repeatedly talked to Ohman about firing the Plaintiff. (*Id.* ¶ 39). In August 2019, the Plaintiff responded to the prospect of her termination by writing in an email to Branch (with Ohman carbon copied), *inter alia*:

> You can fire me, if you see fit. I serve at your pleasure. There will be repercussions if I am fired- this is not a threat, it is my professional evaluation and prediction, and my personal indication. If you have any doubts here, I should and will explain the ramifications to you.
>
> Until then, I will not go voluntarily or quietly. I will stay, and

2

> work hard to fix the problems I was hired to solve. I will do so in a way respectful and protective of your position, and your ownership, as well as the 1000 lives [sic] that depend on Ermi, as is my legal and ethical obligation. That does not mean that I will suffer inappropriate behavior, or allow others to be rendered ineffective. I expect that my tenture [sic] should last at least until the end of the year, or other mutually agreeable time.

(*Id.* ¶ 46). Following this and other similar messages sent to Ohman, Branch, Ohman, and Madrid then met with the Plaintiff and agreed that the Plaintiff would work at ERMI through the end of 2019, at which point her employment would end. (*Id.* ¶¶ 42, 44, 49-50).

In October 2019, the Plaintiff confided to Ohman that she would be meeting with a lawyer in the week of October 21, 2019, to discuss filing a whistleblower suit. (Pl.'s Statement of Additional Material Facts ¶ 96; Cooley Dep., [Doc. 114-1], 77:1-25).[2] Ohman, Branch, and Madrid agreed to accelerate the Plaintiff's resignation, although the exact timing of when that agreement occurred is unclear. (Defs.' Statement of Undisputed Material Facts ¶¶ 52-53; Ohman Dep. 103:12-18).[3] On October 21, 2019, the Plaintiff lost access to her

---

[2] The Defendants argue that this is an improper new fact that the Court should ignore because it was not raised in the Third Amended Complaint. (Defs.' Resp. to Pl.'s Statement of Additional Material Facts p.1 n.1, ¶ 96). This is a puzzling position considering that the Third Amended Complaint clearly states, "In October 2019, Relator confided in Ohman that she was considering filing a whistleblower lawsuit against ERMI." (3d Am. Compl. ¶ 384).

[3] In their Reply, the Defendants point to a declaration signed by the Plaintiff in 2020 that states that Ohman told her about the acceleration "on or about October 12, 2019." (Reply Br. in Supp. of Mot. for Summ. J., at 7 (emphasis omitted)). Now, the Plaintiff states that Ohman informed her that she was being terminated on October 22, 2019. (Cooley Decl., [Doc. 130-2], ¶ 37). The Court finds that this difference does not warrant the use of the sham

3

work email and databases. (Pl.'s Statement of Additional Undisputed Material Facts ¶ 97).

Based on these facts, the Plaintiff alleges that the Defendants fired her for engaging in protected activity. (3d Am. Compl. ¶¶ 486-92). She consequently asserted a claim of retaliatory firing under the False Claims Act. (*Id.*). The Defendants now move for summary judgment and seek to strike a declaration relied upon by the Plaintiff.

## II. Legal Standard

### A. Motion to Strike

"Motions to strike generally are disfavored." *SIPCO, LLC v. Control4 Corp.*, 2012 WL 526074, at *3 (N.D. Ga. Feb. 16, 2012) (citation omitted). Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Only the following are considered a "pleading" under the Federal Rules of Civil Procedure: a complaint; an answer to a complaint; an answer to a

---

affidavit rule because there is no inherent contradiction. In *Poitevint v. United Recovery Sys., LP*, 899 F. Supp. 2d 1230, 1237-38 (N.D. Fla. 2012), the court declined to apply the sham affidavit rule when the initial affidavit said the call occurred "on about the 16th of the month" and a later affidavit said it occurred on approximately the 14th. It did so because both statements "merely g[ave] a rough date of the call. There is no outright contradiction." *Id.* at 1238. Similarly, here, the initial declaration that the Plaintiff signed in a separate case merely gave an approximate date. These statements therefore "fall into the category of statements that create an issue of credibility or go to the weight of the evidence, not those which are transparent shams." *Israel v. Sonic-Montgomery FLM, Inc.*, 231 F. Supp. 2d 1156, 1165 (M.D. Ala. 2002) (quotation marks and citation omitted).

4

counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and if the court orders one, a reply to an answer. FED. R. CIV. P. 7(a).

### B. Motion for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Discussion

The Court will start by considering the Defendants' Motion to Strike and then analyze the arguments for summary judgment.

### A. Motion to Strike

The Defendants seek to strike portions of the Plaintiff's Declaration. The Defendants do not deny that Rule 12(f) does not apply here because a declaration is not a pleading under Rule 7(a). (Reply Br. in Supp. of Defs.' Mot.

to Strike, at 2 n. 1). Instead, they argue that they may seek a motion to strike pursuant to the Court's "inherent authority to enforce its orders and ensure prompt disposition of legal actions." (*Id.*) (quoting *Fisher v. Whitlock*, 784 F. App'x 711, 712 (11th Cir. 2019) (quotation marks omitted)); *see also Madura v. Bac Home Loans Servicing, LP*, 593 F. App'x 834, 849-50 (11th Cir. 2014) (per curiam) (finding no abuse of discretion when a district court struck or denied various motions that were filed past deadlines or were filed in violation of local rules because deference is given to district courts' interpretation of local rules and docket management). However, the Defendants are challenging whether the Court may consider the Declaration as evidence in the Motion for Summary Judgment. Their argument is not based on a violation of a court order or anything related to docket management.

At bottom, "a motion to strike is not the proper vehicle for challenging evidence on summary judgment." *Metlife Life & Annuity Co. of Conn. v. Akpele*, 131 F. Supp. 3d 1322, 1328-29 (N.D. Ga. 2015); *see also Deans v. City of Coll. Park*, 2023 WL 2370966, at *1 (N.D. Ga. Jan. 11, 2023) ("Plaintiff responds that this Court should summarily deny Defendant's motion because a motion to strike is not the appropriate vehicle for challenging a declaration. Given the case law in this district, the undersigned must agree with Plaintiff on this point." (compiling cases) (citations omitted)) *report and recommendation adopted by* 2023 WL 4401617; FED. R. CIV. P. 56 advisory committee's note to 2010 amendment ("Subdivision (c)(2) provides that a party

may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting . . . There is no need to make a separate motion to strike."). The Defendants' Motion to Strike will consequently be denied as improper. Nevertheless, "[t]he Court will . . . review the evidence and disregard any portions of the [declaration] determined to be inadmissible." *Metlife Life & Annuity Co. of Conn.*, 131 F. Supp. at 1329 (citation omitted).[4]

### B. Motion for Summary Judgment

#### i. Liability

As the Court has previously stated,

> The False Claims Act . . . creates a private right of action for a person who is "'discriminated against in the terms and conditions of her employment' for engaging in protected activity." To establish a prima facie case of retaliation, a plaintiff must allege three essential elements: "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." Protected activity, as defined in the statute, includes either "[1] lawful acts done by the employee ... in furtherance of an action under [the False Claims Act] or [2] other efforts to stop 1 or more violations of [the False Claims Act]."

*United States ex rel. Cooley v. ERMI, LLC*, 2022 WL 4715679, at *8 (N.D. Ga. Sept. 30, 2022) (citations and footnote omitted). "Then, if a defendant provides a legitimate, nondiscriminatory reason for termination in response to the

---

[4] The Court notes that the Defendants objected to the use of the Declaration in their Response to Additional Statements of Material Fact.

plaintiff's prima facie showing, the plaintiff bears the burden of persuasion that the proffered reasons are pre-textual." *Schinnerer v. Wellstar Health, Inc.*, 2024 WL 476960, at *4 (N.D. Ga. Feb.7, 2024) (quotation marks, alterations, and citation omitted).

With regard to lawful activity done in furtherance of a False Claims Act action, the Act's protection "applies not only where a false claims action is actually filed, but also where the filing of such an action, by either the employee or the government, was a 'distinct possibility' at the time the assistance was rendered." *United States v. Millennium Physician Grp.*, 2023 WL 2022228, at *8 (M.D. Fla. Feb. 15, 2023) (quotation marks and citation omitted). The Plaintiff testified in her deposition that she discussed compliance issues with Ohman and told him that she was going to talk to an attorney on the week of October 21, 2019, about possibly filing a whistleblower lawsuit. (Cooley Dep., 74:3-77:25). [5] The Court has already found that this is sufficient to constitute protected action when it was alleged in the Second Amended Complaint. *Cooley*, 2022 WL 4715679, at *10 ("[T]he allegation that Cooley and Ohman, then ERMI's CEO, discussed filing a whistleblower action against ERMI, pushes her retaliation claim over the line."). The same reasoning applies here.[6]

---

[5] The Defendants argue that the Plaintiff's deposition testimony is an inadmissible new fact. (Defs.' Response to Pl.'s Statement of Additional Undisputed Material Facts ¶ 79). However, as stated above, this fact plainly appears in the Third Amended Complaint. (3d Am. Compl. ¶ 384).

[6] The Defendants do not appear to dispute in this Motion that the Plaintiff's discussion with Ohman constitutes protected activity.

8

The Defendants argue that there is no genuine issue of material fact that this protected activity caused any adverse employment action. (Defs.' Br. in Supp. of Mot. for Summ. J., at 8). The relevant adverse employment action here is the decision by the Defendants to accelerate the Plaintiff's resignation.[7] That may be a cognizable adverse employment action. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (explaining that even though the defendant already had plans to fire the plaintiff before the plaintiff sent a letter complaining of discrimination, "the evidence establishes that the letter did cause Alvarez to be fired the day after she emailed it, which is sooner than she otherwise would have been, and that is enough to establish the adverse action element of her retaliation claim.").[8] Thus, the question at issue here is

---

[7] To the extent that the Plaintiff argues that the initial agreement for her to resign at the end of 2019 constitutes an adverse employment action, it cannot form the basis of her claim because it occurred in August which was before her protected activity in October. *See Eliassaint v. RTG Furniture Corp.*, 551 F. Supp. 3d 1293, 1311 (M.D. Fla. 2021) ("[I]f the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected." (citation omitted)) She asserted in her deposition that she also told Ohman that she was considering a whistleblower suit in July, but that did not appear in the Third Amended Complaint. (Cooley Dep. 76:10-77:8). Since this would provide a new theory on which to support her claim, she cannot raise it for the first time at the summary judgment stage. *King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1273 (N.D. Ala. 2014) ("*Gilmour* [*v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004)] and *Flintlock* [*Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221 (11th Cir. 2013)] procedurally foreclose Mr. King from belatedly attempting to amend his complaint in any critical manner through his brief and/or deposition testimony.").

[8] In their Reply, the Defendants assert that there is no adverse employment action in this case because the Plaintiff was paid until the end of the year. (Reply Br. in Supp. of Mot. for Summ. J., at 6-7). However, they did

whether there is a genuine issue of material fact as to whether the Plaintiff stating that she was meeting with a lawyer to discuss filing a whistleblower suit caused the Defendants to unilaterally accelerate her resignation. The Court has previously stated the causation standard for a False Claims Act retaliation action:

> Under Eleventh Circuit precedent, the but-for causation standard applies to False Claims Act retaliation claims. The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. However, close temporal proximity between two events, standing alone, is not a panacea, absent any other evidence that the employment decision was causally related to the protected activity. For example, there is no causal connection between a protected act and an adverse action, where the adverse action was caused by intervening act of misconduct. That intervening act of misconduct can occur before or after the plaintiff engaged in the alleged protected activity.

*Schinnerer*, 2024 WL 476960, at *4 (quotation marks and citations omitted).

The Defendants assert that the temporal proximity between the Plaintiff's alleged discussion with Ohman and her accelerated resignation does not establish an inference of causation because there was an intervening act. (Defs.' Br. in Supp. of Mot. for Summ. J., at 10-16) ("While Cooley alleges that ERMI took actions to terminate her in October 2019 within days of her threatening a whistleblower action against ERMI, the reality is that, by that

---

not raise any challenge to the adverse action element in the initial motion. "[T]he Court will not consider new arguments made for the first time in the reply brief." *Boring v. Pattillo Indus. Real Est.*, 426 F. Supp. 3d 1341, 1349 (N.D. Ga. 2019).

point, Cooley had been living on borrowed time for months.") Namely, they point to the Plaintiff's purported failure to submit the AHCA license application in May 2019. However, it came to light that Branch was considering firing the Plaintiff by August, at the very latest. (Defs.' Statement of Undisputed Material Facts ¶ 40; Pl.'s Response to Defs.' Statement of Undisputed Material Facts ¶ 40). After the Plaintiff indicated that there would be "repercussions" if she were fired, she and the Defendants agreed that she would resign at the end of the year. (Defs.' Statement of Undisputed Material Facts ¶¶ 46, 50). The Defendants point to no other intervening acts from the time that agreement was formed to the time that the Defendants decided to accelerate the resignation.[9] Importantly, the relevant adverse action here is the acceleration of the resignation rather than the resignation agreement itself. There is simply no indication whatsoever that—prior to the protected activity—the Defendants contemplated *accelerating* the resignation due to any misconduct by the Plaintiff.[10] Given that, the Court finds that the short temporal proximity between her protected action and the acceleration of the

---

[9] The Defendants' argument regarding ERMI's purported restructuring does not involve misconduct on the part of the Plaintiff. Therefore, it is more appropriately considered as a potential non-retaliatory basis for the adverse employment action, which is discussed below.

[10] In other words, the purported prior misconduct was already dealt with and taken into account by the original resignation agreement. Then, the Defendants changed the terms of that agreement by accelerating the resignation, but there is no account for why the prior perceived misconduct caused the later change in the resignation terms (e.g., no new facts that came to light about the misconduct that required expediting her departure).

11

resignation is sufficient to meet her burden of production for her prima facie case.

Accordingly, the Defendants have an opportunity to assert a non-retaliatory basis for the Plaintiff's accelerated resignation. *See Schinnerer*, 2024 WL 476960, at *4. If they do, the Plaintiff must provide sufficient evidence that the asserted reason is pretext. *See id.* The Defendants contend that the accelerated resignation occurred because of a restructuring rather than retaliation. (Defs.' Br. in Supp. of Mot. for Summ. J., at 14). They specifically state that Branch, Ohman, Madrid, and Matt Mitchell in Human Resources had conversations about restructuring in October 2019. (Defs.' Statement of Undisputed Material Facts ¶ 52). According to the Defendants, they agreed to include the Plaintiff in the restructuring since she was not going to be at ERMI past 2019 anyways. (*Id.* ¶ 53). The Court finds that there is a genuine issue of material fact as to whether this explanation is pretextual.

As an initial matter, if this meeting occurred before the Plaintiff engaged in the protected activity, then that would conclusively establish that this was not pretextual. *See Swartz v. Interventional Rehab. of S. Fla., Inc.*, 2022 WL 1664128, at *11 (S.D. Fla. Mar. 30, 2022) (finding that "[t]he uncontradicted record shows that the decision to terminate Dr. Swartz was made on August 15, 2019, and the first plausible instance of Dr. Swartz engaging in protected activity sufficient to raise a claim for retaliation under the False Claims Act or the Florida Whistleblower Act was on August 16, 2019"

and therefore left "no room for argument that Defendant was aware of Dr. Swartz's alleged protected acts before it made the decision to terminate him." (citation omitted)) However, it is unclear whether this meeting occurred before or after the Plaintiff's protected activity; all the Defendants can say is that this decision occurred in "October 2019." (Defs.' Statement of Undisputed Material Facts ¶ 52). Viewing this fact in the light most favorable to the non-movant, a jury could reasonably conclude that it occurred after the Plaintiff's protected activity.

If the jury does make that conclusion, the fact that the acceleration occurred no more than a few days after the Plaintiff engaged in protected activity provides evidence that the proffered reason is pretextual. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("The close temporal proximity between Hurlbert's request for leave and his termination—no more than two weeks, under the broadest reading of the facts—is evidence of pretext, though probably insufficient to establish pretext by itself." (citation omitted)).

Furthermore, the Defendants have offered unclear and/or inconsistent explanations for the Plaintiff's termination. *See id.* at 1298 ("[A]n employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext." (citation omitted)). In *Hurlbert*, the defendant stated that the plaintiff was terminated because of "disciplinary status, unacceptable job performance, and the results of his two skills

13

evaluations." *Id.* However, in the corrective counseling statement and separation notice, the defendant listed "inability to pass the competency review" or "failure to meet competency requirements" as the sole reason for termination. *Id.* at 1298-99. The Eleventh Circuit held that the varying explanations offered by the defendant provided further evidence of pretext. *Id.*

Similarly, here, the Separation Notice asked the Defendants to "state fully and clearly the circumstances of the separation," and the Defendants merely stated "restructure." (Pl.'s Statement of Additional Undisputed Material Facts ¶¶ 106-07). However, the Defendants also state that she was fired because she purportedly mishandled the AHCA license application. (Defs.' Br. in Supp. of Mot. for Summ. J., at 15). They then state that the Plaintiff was "missing meetings and not being a good steward of company resources." (*Id.*). Furthermore, the Defendants state that the termination was accelerated because the dynamic between Branch and the Plaintiff created a "profoundly dysfunctional environment." (*Id.* at 14-15). This failure to be clear and consistent about the basis for accelerating the Plaintiff's resignation provides additional evidence of pretext under *Hurlbert*.[11]

Finally, the Plaintiff testified that the Defendants offered to pay the

---

[11] To the extent that the Defendants are asserting these as alternative non-retaliatory explanations, there is even more evidence of pretext with respect to them. All of the arguments for pretext with respect to the restructuring explanation apply. In addition, these other explanations are directly contrary to what the Defendants stated in the Separation Notice. (*See* Pl.'s Statement of Additional Undisputed Material Facts ¶¶ 106-07).

Plaintiff a bonus/severance specifically conditioned on the signing of a release and waiver of the claims she had against the Defendants. (Cooley Dep. 63:18-64:1). Altogether, there is evidence that shows that just days after the Plaintiff stated that she was going to meet a lawyer to discuss a filing a suit against the Defendants, the Defendants unilaterally accelerated her resignation, would not pay her a bonus/severance unless she released her claims against them, and has given varying accounts for why they did so. A reasonable jury could accept these facts and conclude that the Defendants' explanation of firing the Plaintiff because of a restructuring was pretextual. The Court will therefore deny the Defendants' Motion for Summary Judgment.

> ii. **Back Pay**

The Defendants also argue that the Plaintiff is not entitled to any back pay under the facts of the case. (Defs.' Br. in Supp. of Mot. for Summ. J., at 24-25). Specifically, the Defendants assert that the Plaintiff started working at another company where she received a salary that was equal or greater to the salary she received with the Defendants. (*Id.* at 25); *see also Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 891-892 (8th Cir. 2000). The Plaintiff does not respond to the Defendants' argument in any way and has thereby abandoned any claim to back pay. *See Palmer v. ILG Techs., LLC*, 2021 WL 12301173, at *2 (N.D. Ga. Sept. 22, 2021). She will therefore not be able to recover back pay on her retaliation claim.

15

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Doc. 119] is GRANTED in part and DENIED in part and the Defendants' Motion to Strike [Doc. 134] is DENIED.

SO ORDERED, this __2nd__ day of July, 2025.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge